IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

YVONNE JAKUBOWSKI,

        Plaintiff,

Case No.: 1:11-cv-597

Hon. Robert Holmes Bell

v.

MOSAIC MERCANTILE, INC.,
a Montana corporation, and
HOBBY LOBBY STORES, INC.,
an Oklahoma corporation,
TRIANGLE COATINGS, INC.,
a California corporation, and
MICHAEL YABLON, individually,

        Defendants.
_____/

Michelle McLean (P71393)
Jeannine L. Bolhouse (P71636)
Bolhouse, Baar & Lefere, PC
Attorneys for Plaintiff
Grandville State Bank Building
3996 Chicago Dr. SW
Grandville, MI 49418
(616) 531-7711

Gary L. Stec (P32234)
Harvey Kruse, P.C.
Attorney for Defendant Hobby Lobby
60 Monroe Center, N.W. - Ste. 500B
Grand Rapids, MI 49503
(616) 771-0050

Cleo N. Fekaris (P61731)
Forman Perry Watkins Krutz & Tardy LLP
Attorney for Defendants Mosaic Mercantile,
Inc. and Michael Yablon
17199 N. Laurel Park Drive, Ste. 314
Livonia, MI 48152
(734) 591-0454

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

**BRIEF IN SUPPORT OF HOBBY LOBBY
STORES, INC.'S MOTION SUMMARY JUDGMENT**

1

**Introduction**

Plaintiff, Yvonne Jakubowski, filed this product liability action against Defendant, Hobby Lobby Stores, Inc. ("Hobby Lobby"), even though there are no facts to base such a claim upon. Plaintiff alleged in her pleadings that she was injured due to the mislabeling of a product she bought at a retail outlet owned and operated by Hobby Lobby. (Complaint and pp. 2-3 of Joint Status Report). More particularly, Plaintiff asserted that she thought that she was buying a grout sealer and, instead, obtained a product which presented a health risk to her. (Complaint and Joint Status Report). The truth of the matter is that Plaintiff got what she intended to buy, a grout sealer, and she was aware of this before she filed the lawsuit. Furthermore, nowhere in the pleadings did Plaintiff mention the fact that she used mineral spirits (a hazardous substance) to remove grout sealer that she had just applied to ceramic tiles. Thus, Plaintiff's pleadings contain factual misrepresentations or, at the very least, important facts have been omitted from them.

Setting aside the misrepresentations or omissions, Hobby Lobby had nothing to do with the labeling of the product, and it made no express warranty to Plaintiff. In fact, in her Complaint, Plaintiff averred that Defendant, Mosaic Mercantile, Inc. ("Mosaic"), was the entity that "expressly warranted, represented, and stated that the Product was a grout sealer and to handle, use, and apply the Product consistent with the instructions and directions for grout sealer." (¶ 37 of Complaint). As the non-manufacturing seller of the product, Hobby Lobby's duties were limited. In order to make a prima facie showing, Plaintiff must present proof that the alleged injuries were caused by either a breach of Hobby Lobby's duty to exercise reasonable care, or a failure of the product to conform to an express warranty made by Hobby Lobby. No evidence exists to create a genuine issue of material fact with respect to either

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

2

theory of liability. Plaintiff had no discussions with anyone representing Hobby Lobby about the product she purchased. No written warranties were offered by Hobby Lobby. Moreover, there is no indication that Hobby Lobby failed to exercise reasonable care with respect to Plaintiff's purchase of the product. In short, there are no facts on which to base a claim against Hobby Lobby. Hobby Lobby asked Plaintiff to voluntarily dismiss it from this lawsuit after her deposition was taken. (**Exhibit 1**). She refused to do so. Hence, Hobby Lobby moves for summary judgment pursuant to Fed. R. Civ. P. 56.

### Facts as Alleged by Plaintiff in the Complaint and Joint Status Report

On June 11, 2008, Plaintiff purchased what she believed to be a grout sealer at a Hobby Lobby store. (¶ 10 of Complaint). Plaintiff contended that the product was manufactured and/or supplied by Mosaic. (¶ 10 of Complaint and p. 2 of Joint Status Report).[1] She claimed that she applied the product to ceramic tiles affixed to a small table the same day she made the purchase. (¶ 12 of Complaint). She further claimed that she did this work in a well-ventilated area while wearing rubber gloves and eye protection. (¶ 12 of Complaint and p. 2 of Joint Status Report). Plaintiff allegedly had a reaction which resulted in burns to her face, hands, sinuses, and lungs. (¶ 13 of Complaint and p. 3 of Joint Status Report). Plaintiff asserted that she and her husband "discovered that two labels had been attached to the Product" after the reaction occurred and, upon further inspection, they realized that the outer label was for a grout sealer and the one below it was for a primer. (¶ 17 of Complaint and p. 2 of Joint Status Report). Plaintiff alleged that her husband contacted Mosaic, and Defendant, Michael Yablon, admitted that he had knowledge of a "product mislabeling issue." (¶ 20 and ¶ 21 of Complaint). Plaintiff asserted that testing done by Trace Analytical Laboratories, Inc.

---

[1] In the alternative, Plaintiff plead that the product was manufactured and/or supplied by Defendant, Triangle Coatings, Inc. (¶ 11 of Complaint).

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

3

("Trace") showed that the doubled labeled product and a single labeled grout sealer manufactured by or for Mosaic were "physically and chemically different from each other." (¶ 24 of Complaint). Plaintiff indicated that the product she purchased at Hobby Lobby was a mixture of a sealer and primer. (p. 3 of Joint Status Report).

Plaintiff alleged that due to mislabeling of the product, she was "exposed to noxious chemicals which burned her face, hands, sinuses, and lungs." (Joint Status Report). Plaintiff's Complaint includes the following counts: (I) Michigan Consumer Protection Act, (II) Implied Warranty, (III) Express Warranty, (IV) Negligence, (V) Gross Negligence, (VI) Negligent Infliction of Emotional Distress, (VII) Intentional Infliction of Emotional Distress, (VIII) Consumer Protection Safety Act, and (IX) Federal Hazardous Substances Act. The claim for gross negligence involves only Defendant Yablon. Although Hobby Lobby is named in the heading of Count III (Express Warranty), the Complaint states that Mosaic made the express warranties.

### Facts Revealed Through Discovery

Now that Defendants have had an opportunity to conduct discovery, it has become clear that Plaintiff's pleadings contain misrepresentations of fact or, at a minimum, significant facts have been left out. Plaintiff testified that she purchased grout sealer at a Hobby Lobby store. (pp. 22-24 of Plaintiff's deposition transcript, attached as **Exhibit 2**). No warranties or representations were made to Plaintiff by Hobby Lobby employees, agents or representatives. (pp. 23-27 of Exhibit 2). In fact, Plaintiff admitted that she had had no communication whatsoever with Hobby Lobby employees, agents or representatives about the product she purchased at its store. (p. 23 of Exhibit 2).

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

4

Plaintiff applied the grout sealer to a tabletop on June 12, 2008. (p. 41 of Exhibit 2). She did so by first pouring some of it into a plastic bowl. (pp. 36 and 40 of Exhibit 2). Plaintiff then used "a cheap little paint brush" to put the sealer onto the grout. (pp. 40-44 of Exhibit 2). She testified that she did this work outdoors while wearing gloves. (pp. 33-34 and 41 of Exhibit 2). However, the medical record indicates that Plaintiff was not wearing gloves when she used the grout sealer. (**Exhibit 3**). Plaintiff estimated that it took her 30 to 45 minutes to apply the grout sealer. (p. 42 of Exhibit 2). Plaintiff denied that any of the sealer spilled or splashed onto her body while she was working with it. (pp. 43-44 of Exhibit 2).

After Plaintiff had applied the grout sealer to the tabletop, she spent approximately five minutes using a water soaked rag to attempt to remove remnants from ceramic tiles. (p. 44 of Exhibit 2). She was not successful, and her husband recommended that she try working with mineral spirits to take the sealer off of the tiles. (pp. 44-45 of Exhibit 2). Plaintiff explained at her deposition that she repeatedly poured the mineral spirits onto a rag, and then scrubbed the tiles with the rag for over an hour to remove the grout sealer from them. (pp. 53-54 of Exhibit 2).[2] She had to reapply mineral spirits to the rag throughout the hour or so she was scrubbing the ceramic tiles. (p. 54 of Exhibit 2). Plaintiff was wearing shorts while doing this work. (p. 57 of Exhibit 1). Plaintiff said that she was wearing gloves. (p. 58 of Exhibit 2). The use of mineral spirits removed the remnants from the tiles. (p. 54 of Exhibit 2).

Plaintiff did not wash her body off, or take a shower, after using the grout sealer and mineral spirits. (p. 67 of Exhibit 2). Later that day, she and her husband attended a concert at Meijer Gardens. (pp. 60-61 of Exhibit 2). Plaintiff claimed that she began feeling a bit tired and disoriented at the concert. (p. 61 of Exhibit 2). In addition, she indicated that her nose was

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

---

[2] The Material Safety Data Sheet for mineral spirits states, inter alia, that it can cause irritation to the skin and eyes, and have chronic effects with respect to the lungs and nervous system. (**Exhibit 4**).

5

running and it was sensitive to touch.  (p. 61 of Exhibit 2).  Plaintiff testified that her face broke out in a rash the following day.  (p. 61 of Exhibit 2).  The rash completely resolved within two days.  (pp. 68-69 of Exhibit 1)

After Plaintiff allegedly developed a reaction, her husband discovered that there were two labels on the container of the grout sealer she had used.  (pp. 83-84 of Exhibit 2).  The outer label was for a grout sealer, and the one beneath it was for a primer.  (p. 84 of Exhibit 2).  At that time, Plaintiff assumed that she had used a primer rather than a grout sealer.  Plaintiff's husband then spearheaded an investigation to obtain more information.  (p. 77 of Exhibit 2).

Mr. Jakubowski called Mosaic and spoke with Mr. Yablon.  (p. 85 of Exhibit 2).  He recorded the conversation with Mr. Yablon.  (p. 85 of Exhibit 2).  Mr. Yablon informed Mr. Jakubowski that grout sealer had inadvertently been put into containers with primer labels during the manufacturing process.  (p. 85 of Exhibit 2).  Mosaic realized what had happened, and instead of disposing of the containers or their contents, labels for grout sealer were placed over the labels for primer.  (p. 85 of Exhibit 2).  Throughout the telephone conversation, Mr. Yablon repeatedly told Mr. Jakubowski that the product Plaintiff had purchased and used was a grout sealer and not a primer.  (p. 85 of Exhibit 2).

Mr. Jakubowski subsequently went to Hobby Lobby and bought another container of Mosaic grout sealer.  He also obtained a container of Mosaic primer over the internet.  (p. 9 of Mr. Jakubowski's deposition transcript, attached as **Exhibit 5**).  The grout sealer had a single label. Mr. Jakubowski took samples of both the single labeled grout sealer and double labeled grout sealer to Trace in Muskegon, Michigan to be analyzed.  (pp. 37-39 of Exhibit 2).  Testing conducted by Trace revealed that both samples were grout sealers.  (pp. 79-81 and 86-87 of Exhibit 2 and p. 25 0f Exhibit 5).  The Trace report noted that the sample from the double

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

6

labeled container had two additional compounds as compared to the single labeled sample, but it was consistent with a grout sealer. (p. 80 of Exhibit 2 and p. 25 of Exhibit 5). The Material Safety Data Sheet for Mosaic grout sealer states that it contains no hazardous materials. (**Exhibit 6** and p. 87 of Exhibit 2). Thus, prior to filing this lawsuit, Plaintiff knew or should have known that she purchased and used a non-hazardous grout sealer. (Please see Trace report, attached as **Exhibit 7**).

### Standard for Granting Summary Disposition Pursuant to Rule 56

Summary judgment is to be rendered "forthwith" when one party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial, so long as judgment against that party is appropriate as a matter of law. *Celotex Corp. v. Catrett*, 477 US 317, 323-24 (1986). See also *Department of Commerce v. US House of Representatives*, 525 US 316, 327 (1999). A "genuine issue" exists when the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. This standard parallels the test for judgment as a matter of law under Rule 50(a); a mere "scintilla" of evidence, or evidence that is only "colorable" or not sufficiently probative, is not enough to defeat summary judgment. Instead, there must be evidence upon which a jury could reasonably find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 248-52 (1986). The court will test for a "genuine issue" through the prism of the substantive evidentiary burden – the quantum and quality of proof necessary to support liability under the claims raised. *Anderson,* supra. A fact is "material" if it might affect the outcome of the case. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Id.* Summary judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of her case,

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

7

as to which she has the burden of proof. *Cleveland v. Policy Management System Corp.*, 526 US 795, 804 (1999).

## Purpose of Summary Judgment

The purpose of summary judgment is to isolate, and then terminate, claims and defenses that are factually unsupported. *Celotex, supra*. The United States Supreme Court *in Celotex* emphasized that a summary judgment motion is to be viewed not as a disfavored technical shortcut, but rather as an integral component of the Federal Rules of Civil Procedure. Summary judgment motions must be resolved not only with an appropriate regard for the rights of those asserting claims and defenses to have their positions heard by a fact finder, but also with due regard for the rights of persons opposing such claims and defenses to demonstrate, before trial, that the claims and defenses have no factual basis. *Id.* At a minimum, a plaintiff must plead a legally sufficient claim. A party moving for summary judgment under Rule 56 forces the opponent to come forward with at least one sworn averment of specific fact essential to that opponent's claims or defenses before the time-consuming process of litigation will continue. *Lujan v. National Wildlife Federation*, 497 US 871, 888-89 (1990).

## Plaintiff Cannot Make a Prima Facie Showing Against Hobby Lobby

Plaintiff brought a product liability action against Hobby Lobby despite having no facts to support such a claim. MCL 600.2945(h) defines a product liability action as one "based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product." MCL 600.2945(i) defines "production" as the "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instruction, marketing, selling, advertising, packaging, or labeling" of a

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

8

product. [MCL 600.2945(h) and (i).] Under Michigan law, product liability claims are predicated on a single statute, and are fault-based. *Ryan v. Brunswick Corp.*, 454 Mich 20; 557 NW2d 541 (1997) (abrogated by *Sprietsma v. Mercury Marine*, 537 US 51 (2003) on an unrelated point of law). Therefore, even though Plaintiff has plead alternative theories of liability, this claim is treated as a product liability action.

Under Michigan's 1996 statutory revision of tort law, the liability of a non-manufacturing seller of a product is controlled by statute, namely MCL 600.2945 et. seq. A seller who is not the manufacturer of the product is liable for harm allegedly caused by the product only if it failed to exercise reasonable care, or if the product did not conform to an express warranty it made to the plaintiff. MCL 600.2947(6). If the plaintiff cannot prove either of the above, she has no cause of action against the seller, regardless of the alternative theories plead. *Croskey v. BMW of North America, Inc., 532 F3d 511 (6th Cir. 2008)*. MCL 600.2947(6) provides:

> (6) In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless either of the following is true:
>
> (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.
>
> (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

In *Curry v. Meijer, Inc.*, 286 MichApp 586; 780 NW2d 603 (2009), the court held that MCL 600.2947(6) requires a plaintiff to prove that a non-manufacturing seller of a product failed to exercise reasonable care even if the claim is predicated on a breach of implied

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

9

warranty theory. Plaintiff was injured as a result of a fall from a tree stand while hunting. He purchased the tree stand at a Meijer store; however, Meijer was not the manufacturer of the product. The manufacturer was a defunct corporation. Plaintiffs (husband and wife) sued Meijer and the distributors of the tree stand. The Complaint alleged that defendants were liable for: 1) negligent design and manufacture of the tree stand; 2) failure to warn; 3) sale of a defectively designed and manufactured product; 4) breach of express and implied warranties; and 5) loss of consortium.

Meijer filed a dispositive motion, the basis of which was essentially the same as to the Motion for Summary Judgment brought by Hobby Lobby. In short, Meijer argued that it had made no express warranty to plaintiff and, as a consequence, it could not be held liable in the absence of proof that it failed to exercise reasonable care. Plaintiffs took the position that MCL 600.2947(6) did not require a showing of negligence. In essence, plaintiffs argued that MCL 600.2947(6)(a) did not apply to a breach of implied warranty claim against a non-manufacturing seller. This was a position other plaintiffs had taken in product actions following the enactment of the tort reform legislation in 1996, and before the *Curry* decision was issued in 2009.

The trial court granted defendant's motion and, in doing so, specifically rejected plaintiffs' argument. The court ruled that "for plaintiffs to prevail on a breach of implied warranty claim against a non-manufacturing defendant, they must show that the defendant failed to exercise reasonable care – that the defendant knew or had reason to know of the alleged defect." *Curry, supra* at 590. In other words, the trial court took note of the fact that the statute required a plaintiff making a breach of implied warranty claim to prove that the seller of a product did not exercise reasonable care.

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

The court of appeals affirmed the trial court's ruling. The court pointed out that the 1996 tort reform legislation abrogated Michigan common law as it related to certain product liability doctrines, including the liability of a non-manufacturing seller. *Id.* at 591. Under Michigan common law, a seller had previously been subject to liability under a breach of implied warranty theory if it could be demonstrated that the seller was in the chain of distribution of a defective product. The issue before the court of appeals was whether the statute mandated a showing of fault as to Meijer. The plaintiffs argued that the use of the phrase "breach of any implied warranty" preserved the common law theory of liability without a showing of fault. Based on a careful reading of the statute and the legislative history, the court ruled that plaintiffs' interpretation was inaccurate. The court found that the legislature's use of the word "including" was significant. Specifically, the court stated:

> The Random House College Dictionary (rev. ed., 1988) defines the verb, 'include' in relevant part as 'to contain as a subordinate element, involve as a factor' and 'to take in or consider as a part of or member of.' This definition is crucial because in context, the phrase 'including breach of any implied warranty,' is a present participial phrase derived from the verb, 'include', and is used as an adjective to modify 'care.' Consequently, as used in the aforementioned participial phrase, a breach of any implied warranty constitutes a 'subordinate element' of the broader reasonable care standard. Put another way, a breach of implied warranty claim is a type of, and not separate from, a breach of reasonable care claim.

*Id.* at 593-94.

In summary, the court made it clear that for a plaintiff to prevail in a product case against a non-manufacturing seller, she must prove either a breach of an express warranty or a failure to exercise reasonable care. In particular, the court wrote:

> Contrary to plaintiffs' argument, our holding that § 2947(6)(a) requires a showing of fault to impose liability

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

11

does not render the clause, 'including the breach of any implied warranty,' mere surplusage or nugatory. See *Sun Valley Foods*, 460 Mich 237. Rather, it is plaintiffs' interpretation that would inject uncertainty into this section. Indeed, were subsection (a) to permit two types of claims as plaintiffs contend, then the implied warranty 'exception' would swallow the rule. In other words, any time a plaintiff alleged injury resulting from a product defect, he would need only establish a breach of implied warranty; the reasonable care standard would seldom, if ever, come into play. This would in effect render the entire subsection surplusage or nugatory as the common law breach of implied warranty standard would become the de facto standard in most if not all product defect cases. Such an interpretation runs afoul of the clear intent of the Legislature.

*Id.* at 595-96.

Federal courts in the Sixth Circuit have also concluded that MCL 600.2947(6)(a) requires a plaintiff in an action against a non-manufacturing seller for breach of implied warranty to prove that the seller failed to exercise reasonable care. *Croskey, supra.* The plaintiff in *Croskey* brought suit against the manufacturer and seller of a 1992 BMW after he was severely burned while attempting to add fluid to the vehicle. The plastic neck on the radiator of the car failed and, as a result, scalding radiator fluid spewed onto plaintiff. The plaintiff asked the court to give M. Civ. Jury Ins. 25.21 and M. Civ. Jury Ins. 25.22. Those instructions incorporate the common law rule that does not require the plaintiff to demonstrate negligence on the part of a non-manufacturing seller. The trial judge refused to read the instructions on the ground that they were inappropriate in light of the tort reform legislation passed in 1996, namely MCL 600.2947(6)(a). The plaintiff appealed this ruling and others made by the trial judge after the jury returned a verdict in favor of defendants. The Sixth Circuit held that it was "necessary to modify the instruction to reflect the law as it applied to

12

the seller" …. "to also include the negligence element as required by Michigan statutory law."

*Croskey, supra* at 520-21. In specific, the court stated:

> Defendant BMW NA, the seller, correctly claims that the statute added an element of fault to the traditional test for breach of implied warranty. In other words, the plaintiff must show that the product was sold in a defective condition, the defect caused his injury, and the seller failed to exercise reasonable care. In contrast, plaintiff relies on cases that pre-date the 1996 amendment or otherwise rely on the former version of the law that does not contain a fault or negligence provision. *Hollister v. Dayton Hudson Corp.*, 201 F. 3d 731, 736 (6th Cir.2000), is not to the contrary. It was decided in 2000, but the case was filed in 1996, before the Tort Reform Act took effect. At the time of the ruling, Section 600.2947(6) was not relevant to the case, and the Sixth Circuit did not discuss the statute. The Michigan Supreme Court case, *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 133 N.W.2d 129 (1965), was decided before the Tort Reform Act was passed. While these cases explain the traditional rule for breach of implied warranty claims, they do not shed light on how the Tort Reform Act altered those claims.
>
> Therefore, a plaintiff can recover against a non-manufacturing seller only if the seller fails to exercise reasonable care, or breaches an express warranty. Both the plain language of § 600.2947(6) and the legislative intent behind the statute show that non-manufacturing sellers cannot be held liable for damages due to breach of implied warranty, unless they failed to exercise reasonable care. Given the plain language of the statute, it is clear that the district court did not err in denying plaintiff's request to give the model jury instruction.

> *Id.* at 520.

Similarly, in *Kraft v. Dr. Leonard's Healthcare Corp.*, 646 F. Supp. 2d 882 (2009), the court held that under an implied warranty theory against a non-manufacturing seller of a product, Michigan law requires a plaintiff to prove that the product was sold in a defective condition, the defect caused the injury, and the seller failed to exercise reasonable care. The

HARVEY KRUSE
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

13

court cited the *Croskey* decision as authority for its ruling. The *Kraft* opinion also mentioned that in order to "demonstrate that a defendant failed to exercise reasonable care, district courts have evaluated whether a plaintiff demonstrated that the defendant knew or should have known of the defect." *Kraft, supra* at 888, citing *Konstantinov v. Findlay Ford Lincoln Mercury*, 619 F. Supp. 2d 326, 331-32 (E.D. Mich. 2008).

Plaintiff has not alleged that Hobby Lobby made any express warranties. The Compliant stated that Mosaic made the express warranties. Moreover, Plaintiff testified that no express warranties were made by Hobby Lobby. As a matter of fact, she admitted that she did not speak with anyone acting on behalf of Hobby Lobby about the product.

That being the case, the analysis turns to whether there is any proof that Hobby Lobby failed to exercise reasonable care. There is none whatsoever. Hobby Lobby did not write, modify, or affix the labels to the product. Plaintiff's allegation that she believed she was getting a grout sealer, and obtained something different, is inaccurate. The testing done at Mr. Jakubowski's request demonstrated that Plaintiff purchased a grout sealer. Plaintiff admitted at her deposition that she got a grout sealer. The product she bought does not contain hazardous materials. Assuming arguendo that the container is mislabeled, Plaintiff still does not have a valid claim against Hobby Lobby. There is no evidence that Hobby Lobby failed to exercise reasonable care. In fact, there is no proof that Hobby Lobby knew or had reason to know of any issue regarding the labeling of the product. Mr. Jakubowski only discovered the second label after Plaintiff had had a reaction. Plaintiff is trying to prove liability against Hobby Lobby based on the old common law rule that subjected a non-manufacturing seller to liability if it was merely in the chain of distribution of a defective product. However, under current Michigan law, a non-manufacturing seller such as Hobby Lobby cannot be held liable simply

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI 49503-2926
616-771-0050

because it is in the chain of distribution of an allegedly defective product.  The bottom line is that Plaintiff does not have a claim against Hobby Lobby.

## CONCLUSION

For the reasons stated above, Hobby Lobby respectfully requests that this Honorable Court grant summary judgment in its favor pursuant to Rule 56.

Dated:  February 15, 2012                                   Respectfully submitted,

                                                                                                 HARVEY KRUSE, P.C.

By  /s/  John R. LaParl, Jr.
    Gary L. Stec (P32234)
    John R. LaParl, Jr. (P39549)
    Attorney for Defendant Hobby Lobby
    60 Monroe Center, N.W. - Ste. 500B
    Grand Rapids, MI  49503
    (616) 771-0050

**HARVEY KRUSE**
A PROFESSIONAL CORPORATION
ATTORNEYS & COUNSELORS
60 MONROE CENTER NW, SUITE 500 B
SELECT BANK BUILDING
GRAND RAPIDS, MI  49503-2926
616-771-0050