UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

YVONNE JAKUBOWSKI,

        Plaintiff,

    v.                                    File No. 1:11-CV-597

MOSAIC MERCANTILE, INC.,
a Montana corporation, and
HOBBY LOBBY STORES, INC.,
an Oklahoma corporation,
TRIANGLE COATINGS, INC., a
California corporation, and
MICHAEL YABLON, individually,

        Defendants.
_____/


Hearing re:  Motion for Default Judgment

Before

THE HONORABLE ROBERT HOLMES BELL
United States District Judge
May 31, 2012


APPEARANCES


MICHELLE McLEAN
3996 Chicago Drive SW
Grandville, MI 49418
Attorney for Plaintiff




Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter

```
 1                                        Grand Rapids, Michigan
 2                                        May 31, 2012
 3                                        3:08 p.m.
 4                          -    -    -
 5
 6                   P R O C E E D I N G S
 7
 8          THE COURT:  The next matter is 1:11-CV-97.  Ms.
 9  McLean --
10          MS. McLEAN:  Hello, Your Honor.
11          THE COURT:  -- has been here patiently waiting
12  through this whole matter.  Thank you so much for being so
13  patient here with us.  This has been a very busy afternoon and
14  we're not through yet, so we appreciate your patience with
15  us.
16          This is a motion for a default judgment, and
17  apparently this matter is relating to Mosaic Mercantile, Inc.
18  who is a served defendant, a Montana corporation.  They were
19  served.  They have not answered, so I believe you have not
20  only a motion for default, but you wish to take testimony in
21  this matter.  Is that correct?
22          MS. McLEAN:  That's correct, Your Honor.  Did I hear
23  you say it was against Mosaic Mercantile today, the judgment?
24          THE COURT:  Triangle Coatings, I'm sorry.
25          MS. McLEAN:  Yes.
```

Jakubowski - Direct Examination

```
 1            THE COURT:  Triangle Coatings.  I'm sorry, you're
 2   correct, Triangle Coatings, which is a California
 3   corporation, and service was rendered in California, that's
 4   right.  That's right.
 5            MS. McLEAN:  That's correct.
 6            THE COURT:  You are correct.
 7            MS. McLEAN:  Yes, Your Honor.  I would like to call
 8   my client, Yvonne Jakubowski, to present some testimony to the
 9   Court today as to what her damages are.
10            THE COURT:  Okay.  You may come up here and be
11   sworn.
12                   YVONNE E. JAKUBOWSKI,
13        A witness called at 3:10 p.m., sworn by the Court,
14        testified:
15                    DIRECT EXAMINATION
16   BY MS. McLEAN:
17   Q    Can you state your whole name for the record?
18   A    Yvonne Elaine Jakubowski.
19   Q    Yvonne, do you recall back in 2008 using a product that
20   you purchased from Hobby Lobby?
21   A    Yes, I do.
22   Q    And were you injured after having used that product?
23   A    Yes, I was.
24   Q    Did your injuries consist of sinal -- sinus drainage and
25   trouble breathing, swelling on your legs, and a rash, blisters
```

1     of sorts?

2     A     Yes.

3     Q     And after having used the product did you notice that

4     there was anything wrong with the label?

5     A     Yes, I did.

6     Q     Specifically was it labeled with a double label?

7     A     Yes, it was, one label over another label.

8     Q     Do you know if Triangular Coatings was the manufacturer

9     of that product?

10    A     Yes, they were.

11    Q     And since that has happened, since you were injured, can

12    you tell me -- were you into crafts quite a bit before this

13    occurred?

14    A     Yes, I was.

15    Q     Do you still do a lot of crafts now?

16    A     No, not as much, no.  Not very much.

17    Q     And in terms of your physical symptoms, have you met with

18    a medical doctor?

19    A     Yes, I have.

20    Q     And have you had an increase in bronchitis and sinusitis

21    since the incident?

22    A     Yes, I have.

23    Q     Have you continued to deal with that to this day?

24    A     Yes, I do.

25    Q     What other types of incidents or symptoms have you had?

1  You have coughing?

2  A    Yes, I have coughing.  I have -- now I've developed

3  polyps in my sinuses, and so I've been put on steroids to

4  decrease those, and I get bronchitis and I have a lot of

5  coughing.

6  Q    Does it interfere with your activities that you used to

7  enjoy before?

8  A    Oh, yes, yes.  I used to -- I used to jog and I was a lot

9  more physically active.  And we like to go to movies and

10  concerts and things like that, but if I start coughing and I

11  can't stop, I have to leave, so I can't really enjoy a lot of

12  things that we have in the past, my husband and I.

13  Q    Do you have any concerns about the exposure to the

14  chemicals and long-term consequences?

15  A    I do.  I mean, possibly I could contract cancer in my

16  lungs or in my sinuses or something.  Yeah, I don't know.

17  Q    In terms of other activities like even walking, does it

18  affect you now, like are you having problems breathing if you

19  exert yourself at all versus before you had the exposure to

20  the chemical?

21  A    Yes, I do.  I get shortness of breath if I climb stairs

22  or walk fast.

23  Q    And you've noticed that that specifically occurred after

24  having been exposed to that incorrectly labeled product?

25  A    Yes.  Yes, I have.

1    Q    Do you know about what you've spent in medical costs so
2    far as a result of your increased need to see a doctor?  Do
3    you believe they're --
4    A    I think about -- I think it's around ten or fifteen
5    thousand or around --
6    Q    Specifically out-of-pocket was it close to $1,799.25?
7    A    Yes, I think that would be right.
8    Q    And do you think that you're going to be continuing to
9    have an increased need to see a medical doctor as a result of
10   this condition?
11   A    Oh, yes, definitely.
12   Q    In terms of like fees that you paid in connection with
13   this lawsuit, did you remember hiring a lab?
14   A    Yes.
15   Q    Did you pay a lab fee of $150?
16   A    Yes.
17   Q    Did you have to hire your medical doctor to talk about
18   the connection between your symptoms and the exposure?
19   A    Yes, I did.
20   Q    Did you have to pay him $300?
21   A    Yes.
22   Q    And then other costs, did you pay for transcripts for
23   your medical records?
24   A    Yes, I did.
25   Q    Deposition transcripts, et cetera?

```
 1   A    Yes.

 2   Q    Were your other costs $1,452.66?

 3   A    Yes.

 4   Q    And attorney fees expended to date about $15,760?

 5   A    Yes.

 6   Q    Yvonne, do you believe that Triangular Coatings responded

 7   appropriately to your notice that you had these issues?

 8   A    No, they did not.

 9   Q    Did they show any concern or any care about the fact

10   there was an issue with their product?

11   A    No.

12          MS. McLEAN:  All right.  Your Honor, I have nothing

13   further.

14          THE COURT:  You've settled part of this case with

15   Mosaic, haven't you, and Michael Yablon; is that right?

16          THE WITNESS:  Yes.  Yes, I have, Your Honor.

17          THE COURT:  For about $7,500?

18          THE WITNESS:  Yes, Your Honor.

19          THE COURT:  Now, do you have a copy of the doctor's

20   protocol in this matter, a recent protocol on you?  Is there a

21   doctor's statement?

22          MS. McLEAN:  There was a letter attached to our

23   motion, Your Honor.

24          THE COURT:  I'm sorry?

25          MS. McLEAN:  There was a letter attached with the
```

1    petition to enter the judgment.  I believe it was --

2              THE COURT:  It was a December 11 letter.  Is that

3    the one you're referencing?

4              MS. McLEAN:  That's correct, Your Honor.  I didn't

5    get an updated letter.  She's continued to have incidences.

6              THE COURT:  This is -- basically this letter from

7    Grand Rapids Family Physicians, and I believe it's from Dr.

8    Mohr, indicates what he was told, basically what he was told

9    by your client, which is all fine and good, but I'm looking

10   for something that relates to tests undertaken and objective

11   determinations of what the lung functions are and those

12   things.  Do you have that, any of that?

13             MS. McLEAN:  We don't have that, Your Honor.  In

14   fact, we never did go through with that because there was a

15   conclusive finding that she has an increase in bronchitis and

16   sinusitis that was a definite marked increase.

17             THE COURT:  Well, and I'm not quarreling with you.

18   I just want to try and see if I can -- that she is averaging

19   four visits, four visits per year for respiratory problems in

20   addition to referrals to specialists.  I don't see there are

21   any specialists here.  Are there specialists that she's been

22   referred to?

23             MS. McLEAN:  She has seen an ear, nose and throat

24   doctor to treat the infections.  I have those medical records,

25   but she continues to treat through this main doctor.  That's

1   who she goes to for everything and then he refers her out.  I

2   can solicit testimony, Your Honor, today about what

3   specialists she's seen and what they've done and how they've

4   treated her.

5          THE COURT:  Well, I mean, four per year, I mean, you

6   know, I go twice a year just to get a physical, so I'm trying

7   to think of why four per year would be, you know, would be

8   unusual.

9          MS. McLEAN:  Well, I believe that that was just for

10  the increase in the bronchial issues that she has; that prior

11  to this she would come in, you know, once or twice a year with

12  a cold or something, and then after this has happened she's in

13  four times a year and she's going to see specialists because

14  these infections just aren't getting cured.  She's getting put

15  on multiple different antibiotics.

16         THE COURT:  Well, where do I --

17         MS. McLEAN:  I can --

18         THE COURT:  I'm sorry.  I'm asking for something

19  which I hope is not too intrusive here, but I'm asking for an

20  expert specialist's opinion that there has been presumably

21  lung damage and/or an exacerbation of an underlying problem

22  and that lung sufficiency tests have been conducted and that

23  she is subject to antibiotics and perhaps other forms,

24  modalities of treatment for purposes of rectifying this if

25  it's possible and whether or not it can be rectified or

1    whether it's permanent.  I don't -- I don't have that right

2    here.  I'm not doubting what you're saying.  I just don't have

3    that kind of testimony here, do I?

4              MS. McLEAN:  Well, Your Honor, if that's the

5    testimony you believe you would need before the Court, I'd

6    like a continuation of today and I can bring a witness in that

7    could present that to you.  I wasn't sure exactly what you

8    were looking for today.  I apologize.

9              THE COURT:  Well, you asked me for a figure here and

10   I've got an attorney fee figure here, but that attorney fee

11   figure of 78 hours, is that just for this defendant or is that

12   for all three defendants?

13             MS. McLEAN:  For the whole case from inception up

14   until we reached the recent settlement.

15             THE COURT:  Right, but two of the three people have

16   settled out, right?

17             MS. McLEAN:  Right, and I did take that number into

18   account, Your Honor.  I listed the total and then I subtracted

19   the settlement of $7,500 from the total that we are looking

20   for and that's why I brought the net damages figure down from

21   that.  So the settlement with third parties has been reflected

22   in the number we are looking for.  The number, the $122,000

23   figure, in my motion and my petition I kind of broke down

24   where the numbers are coming from, and then I did put a

25   settlement from third parties in there to reflect that they

1    did get that money.

2              THE COURT:  Right.  Right, but my point is if that's

3    true, then what you're asking me to do is just drop the

4    attorney fee amount just a very small amount for the

5    settlement compared to this today.  Is that what you wanted?

6              MS. McLEAN:  You know, Your Honor, I know this is

7    before the Court in terms of attorney fees.  We can work out

8    whatever is appropriate if we were to reduce the amount of

9    attorney fees, dividing it by the -- dividing it into quarters

10   essentially, but I'm assuming the whole $7,500 didn't go

11   against all the attorney fees.  You know, if we knocked off

12   even a couple thousand dollars, even, you know, $3,000, it

13   would still be --

14             THE COURT:  Okay.  I think I've got a figure

15   here, probably.  Anything else?  Okay.  You may be excused.

16             Anything else you want to tell me about this case?

17             MS. McLEAN:  Just that I've worked with these people

18   for a while, Your Honor, and they have endured -- it was just

19   a real shock to them.  They bought a product they trusted and

20   what seemed to be innocuous turned out to be something that

21   was dangerous and wasn't consistent with the labeling, and as

22   a result she's been dealing with a chronic problem.  We're

23   just looking for some justice, and I would ask that you take

24   that into consideration today in what damages you're going to

25   award to them.

1    THE COURT:  Okay.  This is what I come up with.  I

2  come up with obviously future medical costs and I come up with

3  lab fees, expert fees, costs of $1,452.  Attorney fees, you

4  know, I'll kind of leave those where they are at $15,760.

5  Blue Care Network insurance claim at $704.49; pain and

6  suffering, $60,000.

7    I don't have testimony here on punitive.  Punitive

8  would have to be that someone intended recklessly and

9  negligently, and I don't have testimony on that.  This is a

10 labeling -- mislabeling case.  It's hard to pull punitive out

11 of that.

12    So when I take this and then I subtract $7,500 for

13 settlement of other parties, I come up and then I round back

14 that attorney fee a little bit.  If I round back that attorney

15 fee $2,200, I come up with $80,000 --

16    MS. McLEAN:  Okay, Your Honor.  That's --

17    THE COURT:  -- as a total so that we can enter that

18 as a judgment for $80,000 for Yvonne Jakubowski against

19 Triangle Coatings, Inc.

20    MS. McLEAN:  Thank you, Your Honor.

21    THE COURT:  And that includes everything.

22    MS. McLEAN:  Thank you.

23    THE COURT:  Will you please prepare the judgment and

24 give it to me, send it to me?  I'll sign it and we'll be on

25 our way.

1          MS. McLEAN:  I will, Your Honor, thank you.

2          THE COURT:  Thank you.  Again, I apologize for

3   having you wait so long.  This was a crazy afternoon as you

4   could see.  Entertaining, maybe, to you, but kind of crazy.

5   Thank you so much.

6          MS. McLEAN:  Thank you, Your Honor.

7          (Proceedings concluded at 3:27 p.m.)

8

9                         *     *     *

10

11                      I N D E X

12

13  <u>Witness</u>:                                            <u>Page</u>

14

15  YVONNE E. JAKUBOWSKI

16      Direct Examination by Ms. McLean              3

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

      I, Kevin W. Gaugier, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the proceedings had in the within-entitled and numbered cause on the date hereinbefore set forth.

      I do further certify that the foregoing transcript was prepared by me.

/s/  Kevin W. Gaugier

Kevin W. Gaugier, CSR-3065
U.S. District Court Reporter
110 Michigan N.W.
622 Federal Building
Grand Rapids, MI 49503